

KNO/KVD: USAO2014R00460

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DKC 14 CR 0352

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. |
| | * | |
| CARMEN JOHNSON, | * | (Conspiracy to Commit Wire Fraud, |
| | * | 18 U.S.C. § 1349; Wire Fraud |
| Defendant | * | Affecting a Financial Institution, |
| | * | 18 U.S.C. § 1343; False Statement on |
| | * | Loan Application, 18 U.S.C. § 1014; |
| | * | Aiding and Abetting, 18 U.S.C. § 2; |
| | * | Forfeiture, 18 U.S.C. § 982(a)(2)(A)) |
| | * | |
| ******* | | |



### INDICTMENT

The Grand Jury for the District of Maryland charges that:

JUL 2 3 2014

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

#### Introduction

At all times relevant to this Indictment:

1. Between in or about April 2008 and in or about July 2008, in the District of Maryland and elsewhere, defendant **CARMEN JOHNSON** ("**CARMEN JOHNSON**") conspired with **Nsane Phanuel Ligate, a/k/a Phanuel Peter Ligate** ("**Ligate**"), **Cane Mwihava** ("**Mwihava**"), **Gladyness Abihudi Silaa** ("**Silaa**"), **Larry Johnson** ("**Larry Johnson**"), and others known and unknown to the Grand Jury to fraudulently secure residential mortgage loans. **JOHNSON, Ligate, Mwihava, Silaa**, and **Larry Johnson** used and caused to be used false credit information and false documents – including W-2 forms, earnings statements, and bank statements – for the purpose of inducing lenders to provide residential mortgage loans to **Larry Johnson**. Co-conspirators **Larry Johnson** and **Silaa** then used and caused to be used the property purchased

with the fraudulently secured mortgage loans for the purpose of collecting rent from individuals who qualified for federal housing subsidies.

### Parties and Entities

At all times relevant to this Indictment:

2. Defendant **CARMEN JOHNSON** was a resident of Maryland who owned and operated CJ Lending, LLC and Able Estate & Company, LLC, and provided credit repair services and false credit histories for a fee. **CARMEN JOHNSON** was not licensed to provide credit repair services.

3. **CARMEN JOHNSON** filed Articles of Organization for the creation of CJ Lending, LLC as a Maryland Limited Liability Company for the purposes of originating mortgage loans and refinancing.

4. **CARMEN JOHNSON** filed Articles of Organization for the creation of Able Estate & Company, LLC as a Maryland Limited Liability Company for the purposes of renting property to the disabled and financial planning, and later amended those Articles of Organization by changing the purpose of the company to debt management.

5. **Ligate** was a resident of Ashburn, Virginia and a licensed real estate agent at Fairfax Realty in Silver Spring, Maryland.

6. **Mwihava** was a resident of Bowie, Maryland.

7. Xavier Engineering and Construction Company, Inc. ("Xavier") was incorporated in Maryland as a stock corporation by **Mwihava,** and was formed for the purposes of construction and renovation of residential and commercial buildings.

8. **Silaa** was a resident of Bowie, Maryland and a licensed real estate agent.

9. **Larry Johnson** was a resident of Capitol Heights, Maryland and married to **Silaa**.

10. M&T Bank, Ameribank, Inc., TD Bank, N.A., SunTrust Bank, N.A., and Eagle Bank, N.A. were financial institutions within the meaning of Title 18, United States Code, Section 20(1), whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"). Each of these entities did business in Maryland.

11. M&T Bank and Ameribank, Inc., through its operating subsidiary, Ameribank Mortgage Company, LLC, extended home mortgages to purchasers of residential real estate. As part of the loan approval process, each lender required a prospective borrower to complete a Uniform Residential Loan Application ("URLA") concerning the applicant's current and past employment, intent to occupy the property, income, assets, credit history, and personal identifiers, such as date of birth, Social Security number, and contact information. This information was reviewed by each lender's loan officers and underwriters, and was material to each entity's decision to approve and fund the requested loan.

12. SunTrust Bank, N.A., purchased mortgages extended by Ameribank Mortgage Company, LLC.

13. Title Company A was a title company doing business in Maryland that conducted closings on real estate transactions with an employee acting as the closing, or settlement, agent. A real estate settlement or closing transfers legal title from the seller to the purchaser of a property. A title company handles the settlement or closing by receiving funds from the buyer and buyer's lender and disbursing the proceeds of the transaction in the manner set forth on the settlement sheet, known as the Housing and Urban Development Form 1 ("HUD-1"), which is submitted to the lenders by facsimile, email and other means on behalf of the seller and buyer. These disbursements often take the form of wire transfers that convey funds from one bank account to another. A title company maintains an escrow account to hold the monies it collects

from the buyer and the buyer's lender until the settlement agent disburses the funds at settlement. The disbursement of these escrow funds is restricted to the persons who have legitimate claims on the money and are specifically identified in the HUD-1 settlement statement. Title Company A maintained escrow accounts at Eagle Bank, N.A., in Maryland.

14.     The Federal Housing Administration ("FHA") was a part of the United States Department of Housing and Urban Development and provided government insurance to qualified mortgage loans obtained by individuals from private mortgage lenders and banks.

### The Conspiracy

15.     Between in or about April 2008 and in or about July 2008, in the District of Maryland and elsewhere, the defendant,

**CARMEN JOHNSON**,

did knowingly and willfully combine, conspire, confederate and agree with **Nsane Phanuel Ligate, a/k/a Phanuel Peter Ligate, Cane Mwihava, Gladyness Abihudi Silaa, Larry Johnson**, and others known and unknown to the Grand Jury to commit wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud lenders and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and material omissions ("the scheme to defraud"), which scheme affected financial institutions, and for the purpose of executing and attempting to execute the scheme to defraud did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### Manner and Means of the Conspiracy

16.     It was part of the conspiracy that **CARMEN JOHNSON, Ligate, Mwihava, Silaa, Larry Johnson**, and other persons known and unknown to the Grand Jury made and caused to be made materially false and fraudulent misrepresentations on loan application

4

documents to mortgage brokers, loan officers and lenders when applying for residential real estate mortgage loans including the URLA and HUD-1, which were submitted to the lenders by facsimile, email and other means, on behalf of the sellers and **Larry Johnson**. The material false statements included, among others, the use of the property as a primary residence; monthly income; existing debts and assets; bank accounts; employment history; source of down payments on mortgages; and distribution of proceeds.

17. It was further part of the conspiracy that **CARMEN JOHNSON**, **Silaa** and other persons known and unknown to the Grand Jury made, and caused to be made, a false credit history for **Larry Johnson** which was intended to deceive and did deceive the lenders.

18. It was further part of the conspiracy that **Ligate**, **Mwihava**, and other persons known and unknown to the Grand Jury made, and caused to be made, materially false and fraudulent sales contract addenda from **Mwihava**'s company, Xavier, allotting large amounts of the loan proceeds to be disbursed for improvements or repairs to the subject properties.

19. It was further part of the conspiracy that **CARMEN JOHNSON**, **Ligate**, **Mwihava**, **Silaa**, **Larry Johnson**, and other persons known and unknown to the Grand Jury caused property settlements to occur for which they submitted documents that contained material false statements which were intended to deceive and did deceive the lenders and the FHA, who insured the loans provided by the lenders.

20. It was further part of the conspiracy that **CARMEN JOHNSON**, **Ligate**, **Mwihava**, **Silaa**, **Larry Johnson**, and other persons known and unknown to the Grand Jury sent and caused to be sent the closing packages to the lenders which purportedly revealed what had occurred at closing. In fact, among others, the following loan documents or statements, among

others, within those documents included in the closing packages were materially false, fictitious and misleading: the loan applications and the HUD-1s.

21. It was further part of the conspiracy that **Ligate**, **Mwihava**, and other persons known and unknown to the Grand Jury arranged for loan proceeds from mortgage transactions to be disbursed for repairs or improvements to the subject properties to shell companies, such as Xavier, so they could disguise that the money was really for the benefit of and disbursed to **Ligate**, **Mwihava**, **Silaa**, **Larry Johnson**, and other persons known and unknown to the Grand Jury.

22. It was part of the conspiracy that **Mwihava** and persons known and unknown to the Grand Jury disbursed and caused to be disbursed funds from the bank accounts of Xavier to **Ligate**, **Larry Johnson,** and persons known and unknown to the Grand Jury, as payment for their assistance in obtaining the fraudulent mortgage loan.

23. It was further part of the conspiracy that **Larry Johnson** and **Silaa** intended to obtain rental income by renting the properties to individuals who qualified for federal housing subsidies rather than have **Larry Johnson** live in the properties as his primary residence as indicated on the URLA.

24. It was further part of the conspiracy that **Larry Johnson** and **Silaa** stopped making the mortgage payments on the fraudulently obtained loans and allowed the properties to go into foreclosure.

### Overt Acts

25. In furtherance of the conspiracy, and to effect the objects thereof, the defendant and others known and unknown to the Grand Jury committed the following overt acts in the District of Maryland and elsewhere:

6

A.   **424 Patterson Park Avenue North, Baltimore, Maryland**
     **("424 Patterson Park Avenue North")**

A1.   On or about June 5, 2008, **CARMEN JOHNSON**, **Ligate**, **Mwihava**, **Silaa**, **Larry Johnson**, and persons known and unknown to the Grand Jury, made, and caused to be made, materially false statements on the URLA for the purchase of 424 Patterson Park Avenue North, including the employment, income, debts, assets, and credit history of **Larry Johnson**.

A2.   On or about June 5, 2008, **Ligate**, **Mwihava**, **Silaa**, and persons known and unknown to the Grand Jury, provided and caused to be provided a false and fraudulent sales contract addendum at settlement for 424 Patterson Park Avenue North, and dated April 18, 2008, authorizing $54,430 of the purchase price to be disbursed for improvements at the property to the buyer-designated contractor, Xavier, a company owned by **Mwihava**, even though no pre-closing improvements or repairs were completed for this property which would require a $54,430 payment.

A3.   On or about June 5, 2008, **CARMEN JOHNSON**, **Ligate**, **Mwihava**, **Silaa**, **Larry Johnson**, and persons known and unknown to the Grand Jury, caused Ameribank Mortgage Company, LLC to wire transfer $181,159.65 of the loan proceeds for 424 Patterson Park Avenue North through TD Bank in Vermont to Eagle Bank, N.A., in Maryland, for the escrow account of Title Company A.

B.   **444 Patterson Park Avenue North, Baltimore, Maryland**
     **("444 Patterson Park Avenue North")**

B1.   On or about June 9, 2008, **CARMEN JOHNSON**, **Ligate**, **Mwihava**, **Larry Johnson**, **Silaa**, and persons known and unknown to the Grand Jury, made, and caused to be made, materially false statements on the URLA for the purchase of 444 Patterson Park Avenue North, including the employment, income, and assets of the borrower/applicant.

B2.     On or about June 9, 2008, **Ligate**, **Mwihava**, **Silaa**, and persons known and unknown to the Grand Jury, provided and caused to be provided a false and fraudulent sales contract addendum at settlement for 444 Patterson Park Avenue North, and dated April 18, 2008, authorizing $54,430 of the purchase price to be disbursed for improvements at the property to the buyer-designated contractor, Xavier, a company owned by **Mwihava**, even though no pre-closing improvements or repairs were completed for this property which would require a $54,430 payment.

B3.     On or about June 9, 2008, **CARMEN JOHNSON**, **Ligate**, **Mwihava**, **Larry Johnson**, **Silaa**, and persons known and unknown to the Grand Jury caused M&T Bank to wire transfer $179,866.93 of the loan proceeds for 444 Patterson Park Avenue North through M&T Bank in New York to Eagle Bank, N.A., in Maryland, for the escrow account of Title Company A.

18 U.S.C. § 1349

## COUNTS TWO AND THREE
### (Wire Fraud Affecting a Financial Institution)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 14 and 16 through 25 of Count One are incorporated here and constitute a scheme and artifice to defraud lenders as described in paragraph 15 of Count One ("the scheme to defraud").

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**CARMEN JOHNSON,**

for the purpose of executing and attempting to execute the scheme to defraud, which scheme affected financial institutions, knowingly caused the transmission of the following wire communications in interstate and foreign commerce:

| Count | Real Estate Transaction | Wire Transmission | Date |
|---|---|---|---|
| 2 | 424 Patterson Park Avenue North | Wire transfer of approximately $181,159.65 from Ameribank Mortgage Company, LLC through TD Bank in Vermont to Eagle Bank, N.A. in Maryland for an account held by Title Company A in Maryland | June 5, 2008 |
| 3 | 444 Patterson Park Avenue North | Wire transfer of approximately $179,866.93 from M&T Bank in New York to Eagle Bank, N.A. in Maryland for an account held by Title Company A in Maryland | June 9, 2008 |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS FOUR AND FIVE
### (False Statement on Loan Application)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 14 and 16 through 25 of Count One are incorporated here.

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**CARMEN JOHNSON,**

did knowingly make false statements on Uniform Residential Loan Applications for the purpose of influencing in any way the actions of financial institutions specified below, the accounts of which were insured by the Federal Deposit Insurance Corporation, that is, the defendant made and caused to be made materially false statements regarding credit and debt in Uniform Residential Loan Applications submitted to the following financial institutions for the purpose of securing mortgage loans for real estate:

| Count | Real Estate | Financial Institution | Date |
| --- | --- | --- | --- |
| 4 | 424 Patterson Park Avenue North | Ameribank, Inc. and SunTrust Bank, N.A. | June 5, 2008 |
| 5 | 444 Patterson Park Avenue North | M&T Bank, N.A. | June 9, 2008 |

18 U.S.C. § 1343
18 U.S.C. § 2

## FORFEITURE ALLEGATION
(Forfeiture of Wire Fraud False Statement Proceeds)

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982(a)(2)(A), as a result of the defendant's conviction under Counts One through Five of the Indictment.

2. As a result of the offenses charged in Counts One through Five, the defendant,

**CARMEN JOHNSON,**

shall forfeit to the United States all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to, the following:

    a. Personal and real property, including vehicles and U.S. currency;

    b. At least $352,091.82 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is proceeds obtained, directly or indirectly, as a result of such violations.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of any defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) to seek forfeiture of any other property of said defendant up to the value of the forfeitable property, that is, at least $352,091.82.

18 U.S.C. § 982(a)(2)(A)

*[signature]*
Rod J. Rosenstein
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson ()

Date:   July 23, 2014